IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
|  | * |  |
| RELINE AMERICA, LLC, *et al.*, | * |  |
| Plaintiffs, | * |  |
| v. | * | Civil Action No. PX 23-00435 |
| CHRISTIAN NOLL, *et al.*, | * |  |
| Defendants. | * |  |

\*\*\*\*\*\*

**<u>MEMORANDUM OPINION</u>**

This complex breach of contract action involves five corporate and individual Plaintiffs, nine corporate and individual Defendants, and six interlocking agreements concerning the parties' joint business ventures in the pipe-lining industry.  *See* ECF No. 21.  Plaintiffs, William Pleasants, Reline America, LLC ("Reline America"), Reline Holdings, LLC ("Reline Holdings"), Sugarloaf Financial Group, LLC ("Sugarloaf"), and Year 2003 Trust for Descendants ("Year 2003 Trust"), sue Christian Noll, Bernd Flossmann, Ludwig Allman, and SML Verwaltungs GmbH's ("SML") (collectively the "Individual Defendants"); RelineEurope GmbH ("RelineEurope") and Reline APTEC GmbH ("APTEC") (collectively the "Reline Europe Defendants"); Reline Management Corporation ("Reline Management"); and Bregal Unternehmerkapital GmbH ("Bregal") and Pipe Holding GmbH ("Pipe Holding") (collectively the "Bregal Defendants") for a host of contract and fraud claims stemming from a soured corporate merger.  *Id.*

Pending is the Individual Defendants' motion to dismiss the claims for failure to engage in mediation prior to suit, as required by several applicable agreements.  ECF No. 29.  The issues are fully briefed, and no hearing is necessary.  *See* Loc. R. 105.6.  For the following reasons, the

1

Court finds that Plaintiffs and the Individual Defendants must mediate their claims before this suit may proceed.

## I.   Background[1]

In 2005, Pleasants founded Reline America, a business that repairs old or damaged water and sewer pipes with ultraviolet cured-in-place-pipe lining systems.  ECF No. 21 ¶¶ 20–21. Reline America holds the North American rights for its pipe lining systems and services clients in North and South America.  *Id.* ¶¶ 21, 24.  As of early 2019, German Defendants Noll, Flossmann, and Allmann held ownership interests in Reline America's European counterparts, the Reline Europe Defendants, each of which are headquartered in Germany and provided similar products and services to European and Asian markets.  *Id.* ¶¶ 11–13, 16–17, 31, 66.

After many years of working with Noll, Flossmann, and Allmann, Plaintiffs agreed to sell 50% of their ownership interest in Reline America to the Individual and Reline Europe Defendants.[2]  ECF No. 21 ¶¶ 25, 32.  In exchange, the Individual and Reline Europe Defendants were to provide Reline America with business resources to help Reline America grow its presence in American markets.  *Id.* ¶¶ 25, 29, 60–61, 66–68.  Those resources would include new products created by RelineEurope, shared brand names and trademarks, joint purchasing deals, and marketing services.  *Id.*

Originally, the parties expected that the Individual and Reline Europe Defendants would be parties to the agreement to purchase an ownership interest in Reline America.  ECF No. 21 ¶ 33.  But according to Noll, Flossmann, and Allmann, certain domestic and German laws

---

[1]  These facts are derived from the Second Amended Complaint and construed most favorably to Plaintiffs. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

[2]  The Second Amended Complaint does not discuss the corporate structure of SML, RelineEurope, or APTEC.  *See* ECF No. 21.

prevented German citizens and corporate entities from directly contracting with Reline America in its then-existing corporate form. *Id.* As a workaround, the Individual and Reline Europe Defendants urged Pleasants to convert Reline America into a limited liability corporation ("LLC"). *Id.* Next, RelineEurope formed Reline Management in the United States so that it could become a member in Reline America. *Id.* ¶¶ 15, 33.

Ultimately, on January 7, 2019, the parties entered into a series of interlocking agreements to effectuate the sale of the 50% interest in Reline America to Reline Management on behalf of the Individual and Reline Europe Defendants. ECF No. 21 ¶ 25. Specifically, the Membership Interest Purchase and Assignment Agreement ("**Membership Purchase Agreement**") between Plaintiff Reline Holdings and Defendant Reline Management facilitated Reline Management's acquisition of its 50% interest and 25% voting rights in Reline America. *Id.* ¶¶ 27–28; ECF No. 41-1 at 1. Next, the **Operating Agreement**, executed by Plaintiff Reline Holdings and Defendant Reline Management, established Reline Management's ownership interest in Reline America as set forth in the Membership Purchase Agreement. ECF No. 21 ¶ 30; ECF No. 29-2 at 26. Third, the Cooperation & Cross-License Agreement ("**Cooperation Agreement**"), executed between Plaintiff Reline America and Defendant Reline Management, memorialized the cross-licensing of all intellectual property rights and for Reline America to offer-for-sale products developed by RelineEurope. ECF No. 21 ¶¶ 29, 49; ECF No. 41-2 at 1. Fourth, the **Undertaking Agreement** between Plaintiff Reline America and Defendants SML, RelineEurope, and APTEC incorporated by reference terms of the **Cooperation and Operating Agreements** and recognized the parties' responsibility to ensure Reline Management could fulfill its obligations under those agreements. ECF No. 21 ¶ 54; ECF No. 29-3 at 1. Last, Plaintiff Year 2003 Trust executed the **Reline Management Note** to loan $4,000,000 to Reline

Management for the acquisition of the 50% interest in Reline America; and Defendant Reline Management executed the **Collateral Assignment** to secure the loan.  ECF No. 21 ¶¶ 44–45. Collectively, the parties refer to these agreements as the **Definitive Agreements**.  *See id.* ¶¶ 25–26.

Pleasants conditioned entering into the Definitive Agreements on Noll, Flossmann, and Allmann's promise to remain personally involved in the everyday operations of the Reline Europe Defendants, Reline Management, and SML.  ECF No. 21 ¶¶ 34–35.  The three men agreed to Pleasants' terms, provided that they could eventually sell their membership interest in the Reline Europe Defendants, Reline Management, and SML.  *Id.* ¶ 36.  Ultimately, the gentlemen struck a compromise, called the "Global Sale provision," included within Section 7.01 of the Operating Agreement.  *Id.* ¶¶ 37–38.  The Global Sale provision prevented Plaintiffs, the Reline Europe Defendants, and Reline Management from selling their interests until after the five-year anniversary of the Definitive Agreements.  *Id.*; ECF No. 29-2 at 16 (Sections 7.01 and 7.02 of the Operating Agreement).

At some point before the five-year anniversary, the Individual Defendants, Reline Europe Defendants, and Reline Management surreptitiously sold their interests to the Bregal Defendants, in violation of the Global Sale and other provisions in the Operating and Cooperation Agreements.  ECF No. 21 ¶¶ 39–43, 51–52, 55–58.  Noll, Flossmann, and Allmann also allegedly induced Plaintiffs to enter the Definitive Agreements at a lower acquisition price through a series of material misrepresentations and omissions, to include falsely claiming that a newly developed product was ready for market; hiding the development of other RelineEurope products; and falsely promising to jointly purchase raw materials with Reline America.  *Id.* ¶¶

49, 59–65, 67–68.  From this, Plaintiffs aver that they were fraudulently induced to enter the

Definitive Agreements for an artificially low acquisition price.  *Id.* ¶¶ 62–63, 65–66, 69.

On February 17, 2023, Plaintiffs filed suit against the Individual Defendants for common

law breach of contract, fraud, civil conspiracy, and declaratory judgment pursuant to Md. Code,

Cts. & Jud. Proc. §§ 3-406 & 3-407.  ECF No. 1.  Plaintiffs next amended the Complaint before

service, adding claims against the Bregal Defendants.  ECF No. 12.  And on September 11, 2023,

the Court granted Plaintiffs' motion to file the Second Amended Complaint to allow for minor,

non-substantive corrections.  ECF No. 21.

The Second Amended Complaint alleges twelve statutory and common law causes of

action, eight of which implicate the Individual Defendants.  Those claims are breach of contract

concerning the Operating, Cooperation, and Undertaking Agreements (Counts I–II); breach of

fiduciary duty (Count V); declaratory judgment concerning the Operating, Cooperation,

Membership Purchase, and Undertaking Agreements (Counts VI–VIII); common law fraud

(Count IX); and civil conspiracy (Count X).[3]  ECF No. 21.  All claims against the Individual

Defendants either expressly or impliedly invoke the Undertaking or Cooperation Agreements.

*See id.*

On January 19, 2024, the Individual Defendants moved to dismiss the claims against

them because Plaintiffs had failed to first engage in nonbinding mediation prior to filing suit as

required by the Cooperation and Undertaking Agreements (hereafter "the Mediation Provision"

or "Provision").  ECF No. 29-1 at 19–26.  Plaintiffs disagree, principally asserting that the

Provision does not reach the Individual Defendants as non-signatories to the pertinent

---

[3] Plaintiffs have withdrawn Count IV, alleging breach of the covenant of good faith and fair dealing, as to
the Individual Defendants only.  ECF No. 21 ¶¶ 123–31; ECF No. 41 at 27 n.5.

Agreements.  ECF No. 41 at 13–20.  For the following reasons, the Individual Defendants have the better argument.

## II.     Analysis

The Court reviews the claimed failure to satisfy a contractual condition precedent under the standard set forth in Federal Rule of Civil Procedure 12(b)(6).  *See Dominion Transmission, Inc. v. Precision Pipeline, Inc.*, No. 3:13442-JAG, 2013 WL 5962939, at *3 (E.D. Va. Nov. 6, 2013); *see also Smith v. Spizzirri*, 601 U.S. 472, 478 n.2 (2024).  Accordingly, the Court "accept[s] the factual allegations in the complaint as true and construe[s] them in the light most favorable to the nonmoving party."  *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018).

The Individual Defendants rely on an identical Mediation Provision in the Undertaking and Cooperation Agreements that require mediation of all disputes arising from or related to the Agreements.  *See* ECF No. 29-3 at 4–5; ECF No. 41-2 at 14–15.  The Provision reads:

> It is hereby agreed that, if at any time hereafter, any Dispute arises between the Parties, then as a condition precedent to the filing of any action pursuant to Section 6.5 hereof, the recovery of any damages or the enforcement of any right hereunder, the Parties hereto agree to seek resolution of the Dispute through negotiation, which if unsuccessful shall be followed by nonbinding mediation, as provided herein, and thereafter, only if unsuccessful in resolving the Dispute through mediation, may a Party seek relief through litigation.

ECF No. 29-3 at 4–5; *see also* ECF No. 41-2 at 14–15 (same).

"Dispute" is defined broadly, to include "all disputes, claims, controversies, differences and other matters in question arising out of or relating to this Agreement and/or the interpretation, breach, termination or invalidity thereof . . . whether in contract, in tort, under any warrant, statute or otherwise."  ECF No. 29-3 at 4 (Section 6.4 of the Undertaking Agreement); *see also* ECF No. 41-2 at 14 (Section 9.4 of the Cooperation Agreement stating the same).

Plaintiffs do not meaningfully contest that the Provision requires mediation as a precondition to suit. *See* ECF No. 41. Nor do they argue that any of the claims do not constitute a "Dispute" subject to mediation. *See id.* Rather, they assert that because the Individual Defendants are not signatories to the Agreements, then the Provision cannot reach claims lodged against them. *See id.* at 13–20. The Individual Defendants argue, in turn, that while they are not all signatories to the Agreements[4], Plaintiffs should be equitably estopped from escaping the Mediation Provision while at once seeking to enforce the remaining contractual terms against them. *See* ECF No. 29-1 at 15–22.

Generally, a party cannot be compelled to mediate unless that party has agreed to mediate. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000). But "it does not follow" that such an obligation "attaches only to one who has personally signed the written [mediation] provision." *Id.* (quoting *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir. 1960)). Indeed, "a party can agree to submit to [mediation] by means other than personally signing a contract containing a [mediation] clause." *Id.*; *see also Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006); *Thompson v. Witherspoon*, 197 Md. App. 69, 83 (2011).

Under principles of equitable estoppel, a signatory to a contract that seeks to enforce certain contract terms against a non-signatory cannot avoid the terms of other, less favorable provisions such as agreements to engage in alternative dispute resolution. *See Long*, 453 F.3d at 627. "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement," the signatory's claims are said to have "arise[n] out of and relate[d] directly to the written agreement"; and when the same agreement includes a

---

[4] SML is a signatory to the Undertaking Agreement. *See* ECF No. 21 ¶ 54; ECF No. 29-3 at 1.

mediation clause, then equitably, those parties should be bound by that term. *Long*, 453 F.3d at 627 (internal citation and quotation marks omitted); *see Int'l Paper Co.*, 206 F.3d at 418 (acknowledging that the contract "provides part of the factual foundation for every claim asserted by [plaintiff]."). This is so because "it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage." *Long*, 453 F.3d at 627 (quoting *Wachovia Bank, Nat. Ass'n v. Schmidt*, 445 F.3d 762, 769 (4th Cir. 2006)); *see also Thompson*, 197 Md. App. at 86–88 (adopting the "direct benefit" test").

That is this case here. Plaintiffs seek to enforce the Cooperation, Operating, and Undertaking Agreements against the non-signatory Individual Defendants. *See, e.g.*, ECF No. 21 ¶¶ 88–111, 132–84. Accordingly, Plaintiffs ought to mediate the claims in advance of suit per the very agreements under which the Plaintiffs seek relief. *See Long*, 453 F.3d at 627; *Int'l Paper Co.*, 206 F.3d at 418. Fairness dictates that if the Plaintiffs bring claims against non-signatories that are based on the contracts, then the non-signatories should be afforded the protection of the Mediation Provision. *See id.*

Plaintiffs next advance a more nuanced argument. They say that the express terms of the Mediation Provision require mediation for the "Parties" to the Agreements; and because some of the Individual Defendants are not "Parties" to the Agreements, they are excluded from the reach of the Provision. ECF No. 41 at 7, 16. In support of this argument, Plaintiffs rely heavily on the Maryland Appellate Court's decision in *WBCM, LLC v. BCC Props., LLC*, No. 715, 2016 Md. App. LEXIS 1463 (Md. Ct. Spec. App. Nov. 30, 2016).

The argument fails for two reasons. First, it amounts to little more than a repackaged contention that the Mediation Provision does not apply to the Individual Defendants as non-signatories. This is because per the agreement terms, the "Parties" *are* the signatories, and non-

parties are non-signatories.  *See* ECF Nos. 29-3 & ECF No. 41-2.  Thus, to say that the

Mediation Provision applies only to "Parties" is simply another way of saying that the provision

applies only to signatories.  *See id.*  The Court already took this into account when deciding that

nonetheless equity dictates that the Provision extend to this class of "non-parties" or non-

signatories, precisely because Plaintiffs seek to *enforce* the Agreements against them.

Second, Plaintiffs reliance on *WBCM, LLC v. BCC Props., LLC* is misplaced.  *See* ECF

No. 41 at 17–18.  *WBCM* involved a breach of a construction contract between an owner and

construction manager.  *See WBCM*, 2016 Md. App. LEXIS 1463.  The contract included an

arbitration clause that covered claims arising from the contract, but also expressly excluded the

project's architect from its reach.  *Id.* at *15–16.  The arbitration clause made plain that "[n]o

arbitration arising out of or relating to the Contract shall include, by consolidation or joinder or

in any other manner, the Architect, the Architect's employees or consultants."  *Id.*  Nonetheless,

the owner filed demands to arbitrate against the architect as well as the construction manager.

*See id.* at *6.  In response, the architect, invoking the exclusionary provision of the arbitration

clause, petitioned the Circuit Court to terminate any arbitration proceedings against it.  *See id.* at

*6–7.  The court denied the petition, reasoning that because the architect received the "benefit"

of having been named as a service provider in the contract, the architect was estopped from

avoiding arbitration.  *See id.* at *8.

The Maryland Appellate Court reversed.  *Id.* at *24.  The court determined that the

architect, in addition to being "neither a signatory to the contract nor the party seeking relief

under the contract," was unambiguously *excluded* from arbitration per the plain language of the

contract.  *Id.* at *15–16.  Thus, the Circuit Court had no grounds in law or equity to bind the

architect to a contractual obligation that "expressly exclud[ed]" him.  *Id.* at *22.

The Mediation Provision, by contrast, bears no resemblance to the arbitration clause in *WBCM*. *See* ECF No. 29-3 at 4–5; ECF No. 41-2 at 14–15. The Individual Defendants are neither named in the Provision nor excluded from the agreement to mediate. *See id.* True, they are not a "Party" to the agreement, and thus are not expressly subject to the Mediation Provision. *See id.* But the same can be said for the entirety of the agreement. And if Plaintiffs wish to enforce certain contractual provisions against the Individual Defendants, they must be bound by all. *Cf. Long*, 453 F.3d at 627; *Int'l Paper Co.*, 206 F.3d at 418. *WCBM* does little to upset that basic equitable proposition.

Last, Plaintiffs reason that because certain of them are *non-signatories* to the Agreements and they bring claims against the Individual Defendants, certain of whom are also non-signatories, then the consequent lack of contractual privity means the Mediation Provision is not binding on the Individual Defendants. ECF No. 41 at 18–19. But by this logic, the lack of privity defeats the contract claims entirely. *See In re Collins*, 468 Md. 672, 699 (2020) (collecting cases) ("the elementary proposition of the law of contracts [is] that 'a contract cannot be enforced by or against a person who is not a party to it.'" (quoting *Crane Ice Cream Co. v. Terminal Freezing & Heating Co.*, 147 Md. 588, 593 (1925)). If the putative non-signatories cannot be bound by the Mediation Provision, then they cannot be bound by the Agreements at all. *See id.* The Court doubts Plaintiffs seriously press this argument.

But even if Plaintiffs do, the Court concludes that the Second Amended Complaint establishes why principles of equity require mediation in advance of litigation as to the Individual Defendants. *See* ECF No. 21. Plaintiffs, as the masters of their complaint, chose to cluster all Plaintiffs against all Individual Defendants as to each cause of action. *See, e.g.*, *id.* ¶¶ 88–111, 132–84 (bringing claims against all Individual Defendants). Moreover, within a single

cause of action, Plaintiffs generally aver breaches of some or all of the six Definitive

Agreements, each of which include different parties as signatories.  *See, e.g.*, *id.* ¶¶ 88–103

(breach of contract claim implicating the Operating, Cooperation, and Undertaking Agreements

against Individual Defendants, Reline Europe Defendants, and Reline Management).  The

Second Amended Complaint, in short, is a charging morass.  And it is neither the job of the

Individual Defendants nor this Court to figure out which Plaintiff intends to pursue which claim

against which Defendant to untangle the purported lack-of-privity thread.  If anything, the

Plaintiffs' kitchen-sink approach to the charges reinforces why equitably the claims should be

subject to mediation in advance of litigation.  *See Long*, 453 F.3d at 627; *Int'l Paper Co.*, 206

F.3d at 418.  Because *all* Plaintiffs clearly attempt to enforce those terms favorable to them, then

so too should Plaintiffs be bound by the mediation provision related to such claims.  *Cf. RUAG*

*Ammotec GmbH v. Archon Firearms, Inc.*, 538 P.3d 428, 434–35 (Nev. 2023) ("where a

nonsignatory to a contract containing an arbitration provision moves to compel another

nonsignatory to arbitrate, the nonsignatory seeking to compel arbitration must demonstrate the

right to enforce the arbitration agreement and show, in law or equity, that compelling the other

nonsignatory to arbitration is warranted.").

## III.    Remedy

Although the Court agrees with the Individual Defendants that mediation is a necessary

precondition to suit, the Court disagrees that dismissal is warranted.  *See* ECF No. 29-1 at 23–24.

As Plaintiffs rightly point out, *see* ECF No. 41 at 19–20, the Court retains discretion to stay

rather than dismiss the action when doing so would effectuate a fair, efficient, and

comprehensive resolution of the case.  *See Maryland v. Universal Elections, Inc.*, 729 F.3d 370,

375 (4th Cir. 2013) ("the grant or denial of a request to stay proceedings calls for an exercise of

the district court's judgment 'to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.'" (quoting *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977))); *cf. Kane Builders S&D, Inc. v. Md. CVS Pharm., LLC*, No. DKC 12-3775, 2013 WL 2948381, at *3 (D. Md. June 13, 2013) ("when enforcing agreements to mediate, 'district courts have inherent, discretionary authority to issue stays in many circumstances, and granting a stay to permit mediation (or to require it) will often be appropriate.'" (quoting *Advanced Bodycare Sols., LLC v. Thione Intern. Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008))); *Dominion Transmission*, 2013 WL 5962939, at *4 ("The Court, when confronted with a defendant's objection that the plaintiff failed to comply with a condition precedent, has the discretion to either stay or dismiss the case." (citations omitted)); *Tattoo Art, Inc. v. Tat Intern., LLC*, 711 F. Supp. 2d 645, 651 (E.D. Va. 2010) ("when parties to a lawsuit have elected not to be subject to the court's jurisdiction until some condition precedent is satisfied, such as mediation, the appropriate remedy is to dismiss the action." (collecting cases)).

A stay best serves each of those interests.  First, a stay is most equitable.  It allows the parties an opportunity to resolve the claims while sidestepping the expense of litigation and preserves Plaintiffs' claims in the event mediation bears no fruit.  *See* ECF No. 41 at 12 (stating that Plaintiffs needed to commence this suit to preserve the statute of limitations because Individual Defendants refused to enter a tolling agreement); *see also* Md. Code, Cts. & Jud. Proc. § 5-101 (three year statute of limitations for civil actions unless otherwise provided by law).

Second, staying the matter allows for eventual global resolution of factually overlapping claims against all Defendants.  The Bregal Defendants, Reline Europe Defendants, and Reline Management have already mediated their claims.  *See* ECF No. 21 ¶ 3.  Proceeding as to those Defendants only would result in piecemeal litigation that could be avoided through a short stay.

*See N. Carolina Eye Bank, Inc. v. High Energy Ozone, LLC*, No. 1:19614, 2019 WL 6730961, at

\*6 (M.D.N.C. Dec. 11, 2019) (exercising discretion to stay the case where some but not all

claims needed to be mediated), *report and recommendation adopted*, No. 1:19614, 2020 WL

13582165 (M.D.N.C. Jan. 16, 2020).  Thus, the Court will stay the case pending the resolution of

mediation.  The parties are directed to file a joint written status report within 90 days from the

date of this Opinion and Order, or upon the completion of mediation, whichever is earlier.

**IV.     Conclusion**

For the foregoing reasons, the Court grants the Individual Defendants' motion insofar as

the applicable Agreements require mediation in advance of litigation.  However, the Court denies

the Individual Defendants' requested relief and instead will stay the case pending the outcome of

mediation.  The remaining arguments for dismissal are denied without prejudice.  The Individual

Defendants may reassert those arguments in the event mediation does not resolve the claims.  A

separate Order follows.


 September 3, 2024                                                     /s/
Date                                                                          Paula Xinis
                                                                                   United States District Judge


13